IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH C. COSTA,<br>*Administrator of the Estate of*<br>*GIOVANNI C. COSTA*,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE PREFERRED INSURANCE COMPANY,<br>Defendant. | 2:16-cv-74 |

## MEMORANDUM OPINION

This case involves a dispute between Joseph C. Costa, Administrator of the Estate of Giovanni C. Costa ("decedent"), and Progressive Preferred Insurance Company, over the amount of underinsured motorist ("UIM") coverage available under a car insurance policy issued by Progressive to decedent's mother, Cynthia Costa, under which the decedent was an "insured." The decedent was tragically killed in an accident while riding as a passenger in a vehicle operated by Andrew Birch. At the time of the accident, the decedent was an "insured" under three policies: (1) a policy issued to his father by Safeco Insurance, which provided UIM coverage of $100,000, stacked; (2) a policy issued to his mother and her sister by Erie Insurance, which provided UIM coverage of $100,000, non-stacked; and (3) the policy at issue here, which provided for $50,000 UIM coverage. As relevant here, Ms. Costa signed a "waiver-of-stacking form," *see* Pa. C.S. § 1738(c)-(d), which reads:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

ECF No. 17-1 at 41. In exchange for the stacking waiver, Ms. Costa received a five-dollar

premium reduction every six months.

Following the accident, Plaintiff, as administrator of the decedent's estate, settled with Birch's insurer for the limits of his policy. Thereafter, he also sought UIM benefits from the three policies under which decedent was an "insured," each of which was at the second level of priority under 75 Pa. C.S. § 1733(a)(2).[1] Safeco and Erie tendered their full policy limits.[2] Progressive, meanwhile, offered $20,000 (which Plaintiff has accepted), taking the position that its policy's "Other Insurance" clause limited its exposure to its pro rata share of the largest applicable single-vehicle UIM policy limit, which is $100,000. The "Other Insurance" provision states, in relevant part:

> If non-stacked coverage is shown on the **declarations page** and this policy is in the Second priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy in the Second priority.

ECF 17-1 at 23-24. Progressive calculated the $20,000 figure by adding up all of the UIM coverage available to the decedent ($100,000 + $100,000 + $50,000 = $250,000) and then determining its share of that total ($50,000 over $250,000 or one-fifth).

Plaintiff filed suit in the Court of Common Pleas of Lawrence County on December 16, 2015, alleging claims for breach of contract and bad faith based on Progressive's failure to tender

---

1. Under that section, "[w]here multiple policies apply," the injured person must first look to the "policy covering [the] motor vehicle occupied by the injured person at the time of the accident." 75 Pa. C.S. § 1733(a)(1). This policy is known as the "first priority UIM policy." If the injuries exceed the coverage of the first priority UIM policy, then the injured person may seek recovery under any "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured." *Id.* § 1733(a)(2). This is known as the "second priority UIM policy." In this case, there was no first priority UIM policy. All three policies providing coverage were second priority policies because the decedent was not occupying any of the covered vehicles during the accident.

2. Plaintiff seems to suggest that because Erie paid the full amount of UIM coverage available under its policy, so too should Progressive because, according to Plaintiff, the policies contain similar "Other Insurance" clauses. However, assuming that is true, Erie was only doing what is was required to do under Pennsylvania law (and presumably also the policy), which requires "the insurer against whom a claim is asserted first" to "process and pay the claim as if wholly responsible" then seek "contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim." 75 Pa. C.S. § 1733(b). Thus, that Erie may have paid its policy limits in full has no bearing on whether Progressive's position in this case is supported by law.

$50,000 in UIM benefits. The action was timely removed to this Court on January 15, 2016. Both parties now move for summary judgment. (ECF Nos. 11, 16).

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Progressive argues that Ms. Costa validly waived inter-policy stacking by signing the statutory waiver form, and, therefore, under the policy's "Other Insurance" provision, Plaintiff's recovery is limited to Progressive's pro rata share of the largest applicable policy limit, which again is $20,000 (one-fifth of the highest applicable limit, $100,000). Progressive also seeks summary judgment as to Plaintiff's bad faith claim. For his part, Plaintiff first argues that Ms. Costa did not knowingly and voluntarily waive inter-policy stacking. In support of that contention, he has submitted an affidavit signed by Ms. Costa, in which she claims that her insurance agent led her to believe that she did not need stacked coverage because there was only one vehicle listed on her policy. Ms. Costa also avers that her agent never explained how she would gain a financial benefit by waiving stacking. In view of that, Plaintiff contends that the "Other Insurance" provision was not triggered, so he should be allowed to recover $50,000 in UIM benefits from Progressive. Plaintiff also contends that, under the Pennsylvania Supreme Court's decision in *Generette v. Donegal Mutual Insurance Company*, 957 A.2d 1180 (Pa. 2008), the "Other Insurance" clause violates Pennsylvania's public policy in favor of providing "excess" rather than "gap" UIM coverage. The Court disagrees with Plaintiff on both counts.

"The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *McGovern v. Erie Ins. Grp.*, 796 A.2d 343, 344 (Pa. Super. Ct. 2002).

3

The former is referred to as intra-policy stacking; the latter, inter-policy stacking. *Id.* 75 Pa. C.S. § 1738 sets forth specific procedures that must be strictly followed in order to waive intra-policy stacking. By contrast, "Section 1738 does not designate specifically whether or how inter-policy stacking can be waived when individual vehicles are insured through single-vehicle policies." *Craley v. State Farm Fire and Cas. Co.*, 895 A.2d 530, 539 (Pa. 2006).

Despite that ambiguity, the Pennsylvania Supreme Court in *Craley* "reject[ed] the premise that Section 1738 does not permit inter-policy stacking waiver." *Id.* at 536. The *Craley* Court cautioned, however, that the waiver must be "knowing," in the sense that the insured must know that she is giving up the ability to stack coverage available from separate policies. *Id.* at 541. The insured in *Craley* had signed the statutory waiver form, which "does not clearly address" inter-policy stacking. *Id.* Nonetheless, the Supreme Court found that the insured "had sufficient notice and that his waiver . . . was knowing." *Id.* As the court explained, because the policy covered only one vehicle, "[the insured] could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy.'" *Id.* at 542. Instead, "the only interpretation fairly available to [the insured] was that his premium-reducing waiver applied to inter-policy stacking." *Id.* The Supreme Court noted, however, that the result might have been different if the policy had covered more than one vehicle because then it wouldn't have been clear what exactly the insured was waiving: the ability to stack vehicles under one policy or the ability to stack coverage available under separate policies. *Id.* at 542 n.18.

Here, as in *Craley*, the policy covers just one vehicle. And the statutory waiver form signed by Ms. Costa states, "I understand that my premiums will be reduced if I reject this coverage." By signing that waiver and receiving the concomitant premium reduction, Ms. Costa

4

is presumed to have known that the "waiver applied to inter-policy stacking[,]" notwithstanding her contention that she did not understand what she was signing. *See id.* at 542; *Neil v. Allstate Ins. Co.*, 549 A.2d 1304, 1309-10 (Pa. Super. Ct. 1988) ("[W]here coverage is clearly worded and conspicuously displayed, failure to read a limitation or to understand it is no defense.").

Because Ms. Costa waived stacking, the "Other Insurance" clause applied, and neither she nor anyone in her household, including decedent, could recover more than "the highest applicable limit for any one motor vehicle under any one policy in the Second priority" – which was $100,000. While Plaintiff argues that Ms. Costa paid a premium for $50,000 of UIM coverage, in reality, she paid a lower premium to be able to recover, at most, $100,000 in UIM benefits from all available UIM insurance in the second priority: the Safeco policy, the Erie policy, and the Progressive policy. *See Heller v. State Farm Ins. Cos.*, No. 408-2008, 2010 WL 1778629 (Pa. Com. Pl. Venango Cnty., Apr. 29, 2010). Any expectation that Ms. Costa had to the contrary was not reasonable in light of the clear language of the policy. *Newkirk v. United Servs. Auto. Ass'n*, 564 A.2d 1263, 1266 (Pa. Super. Ct. 1989). Because Plaintiff already recovered the "highest applicable limit" on behalf of decedent's estate, he cannot recover anything more from Progressive. Indeed, Progressive's offer of $20,000 not only fully satisfied but actually exceeded what Plaintiff was entitled to under the "Other Insurance" clause.[3] Allowing any additional recovery would provide Plaintiff with coverage for which Ms. Costa never paid a premium, which would be inconsistent with the Pennsylvania Supreme Court's admonition that "contractual language" must be construed "to avoid *gratis* coverage." *Penn.*

---

3. The "Other Insurance" clause limited Plaintiff's total recovery from all available UIM second-level insurance to $100,000. Since Plaintiff already recovered that amount, Progressive could have taken the position that it owed Plaintiff nothing and that the onus was on Erie, which paid its policy limits in full, to seek a pro rata contribution from Progressive. This scenario is contemplated both by the language of the policy and by Pennsylvania law. Progressive has not taken that position, though. Instead, by tendering $20,000, it is in effect allowing Plaintiff to recover more than decedent was entitled to under the "Other Insurance" clause.

*Nat'l Mut. Cas. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007).

Plaintiff's reliance on *Generette* does not convince the Court otherwise, for that case is distinguishable in important ways. In *Generette*, the plaintiff was injured as a guest passenger in another's vehicle with respect to which she was not an "insured." 957 A.2d at 1182. She recovered $25,000 under the third-party torfeasor's policy and $50,000 in UIM benefits from Nationwide, which insured the car in which she was riding and from whom the plaintiff could recover even though she was not an "insured" by virtue of 75 Pa. C.S. § 1733(a). *Id.* at 1189 (noting that an injured person can recover under § 1733(a)(1) "regardless of whether [she] would otherwise be an 'insured' under the policy"). Then she turned to her own policy with Donegal, which provided $35,000 of UIM coverage, non-stacked. *Id.* at 1183. Since the plaintiff had waived stacking, Donegal denied coverage, arguing that the policy's "Other Insurance" clause validly effectuated the stacking waiver by limiting "[t]he maximum recovery under all policies in the Second priority" to "the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority." *Id.* at 1183 n.4. The $35,000 available under Donegal's policy did not exceed the $50,000 paid by Nationwide, so Donegal contended that the plaintiff was not entitled to anything more.

The Pennsylvania Supreme Court disagreed. In reaching that conclusion, the court considered two questions: "whether stacking applies in a guest passenger situation and whether [Donegal's] 'Other Insurance' clause is against public policy[.]" *Id.* at 1189. As to the first question, the court explained:

> the application of the stacking waiver in this case turns on whether the use of the term "insured" in the stacking and stacking waiver section, 75 Pa. C.S. § 1738, is limited to the definition of "insured" as provided in the MVFRL's definitions section, 75 Pa. C.S. 1702, which does not include guest passengers. If the term in Section 1738 is limited by Section 1702, then Section 1738, and the relevant provision relating to the waiver of stacking, does not apply to injuries received as

6

a guest passenger in a vehicle because guest passengers are not "insureds." *Id.* at 1189-90. The court determined that the term "insured" as used in § 1738 is in fact limited by the definition in § 1702. *Id.* at 1190. Thus, it was immaterial that the plaintiff had waived stacking because, in the Supreme Court's view, she was not actually trying to stack coverage between policies with respect to which she was an insured. Instead, the court reasoned that the plaintiff's recovery had to be determined solely with reference to § 1733(a)(1)-(2), which governs priority of recovery among UIM policies, not § 1738, which governs stacking of UIM coverage between policies on which the claimant is an insured. *See id.* at 1194 n.5 (Saylor, J., concurring in part and dissenting in part) ("Under the majority's rationale, Section 1738 is not concerned with guest-passenger scenarios where the injured person is not an 'insured' under the statutory definition contained in Section 1702.").

Having decided that the stacking waiver did not preclude the plaintiff's recovery, the Supreme Court went on to invalidate the policy's "Other Insurance" clause because, by purporting to make second-level UIM coverage "gap" rather than "excess,"[4] it ran afoul of Pennsylvania's public policy in favor of "excess" coverage. *Id.* at 1192 (citing *Allwein v. Donegal Mut. Ins. Co.*, 448 671 A.2d 744 (Pa. Super. Ct. 1996)). Critical to the court's holding was the fact "that the priority of recovery section, Section 1733, which directly addresses secondary priority UIM coverage, includes no language creating gap insurance." *Id.* at 1191. The court took that silence to mean that § 1733 incorporates the general definition of UIM insurance, which makes such coverage "excess" rather than "gap" coverage. *See id.* at 1191 ("[W]e cannot,

---

4. In Pennsylvania, UIM insurance must provide "excess" coverage. The insured must be permitted to "recover [UIM] benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first." *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3d Cir. 1991) (citations omitted). By contrast, with "gap" coverage, "a driver is considered 'underinsured' when his liability coverage does not at least equal the uninsured/underinsured coverage carried by the injured insured." *Id.* "[T]he [UIM] coverage merely fills the 'gap' between the tortfeasor's liability coverage and the injured party's [UIM] coverage." *Id.*

7

consistent with the basic rules of statutory construction, read Section 1733 as altering the provision of excess, rather than gap, UIM coverage."); *id.* at 1191 n.15 (noting that "the language of Section 1733 does not counter the UIM definition, which . . . supports excess coverage rather than gap coverage"). Insofar as the policy attempted to turn second-priority UIM coverage into "gap" coverage – i.e., coverage that only filled the "gap" between the first priority UIM policy and the limits of the second priority UIM policy – the court found that it "conflict[ed] with the [statute]" and could not stand. *Id.* To hold otherwise would have required the court "to alter dramatically the MVFRL's provision of excess UIM coverage at the second level of UIM coverage without any direction by the General Assembly[,]" which it was not willing to do. *Id.*

There are two key distinctions between this case and *Generette*. First, the upshot of *Generette* is that an injured person can recover under § 1733(a)(1) as a guest passenger with respect to the policy covering the vehicle in which she was riding during the accident (the first priority UIM policy) and under § 1733(a)(2) on any other policy on which she was an "insured" (the second priority UIM policy), regardless of whether stacking was waived. Recovery under that scenario is determined solely by § 1733(a)(1)-(2). Stacking is not implicated, so it does not matter that stacking was waived. In this case, though, the concept of stacking is implicated. The policies at issue were all second priority UIM policies with respect to which the decedent was an "insured." Therefore, § 1738 applies and the stacking waiver is effective as to the decedent. Second, while Plaintiff submits that the Progressive policy contains "exactly the same language" invalidated in *Generette*, that is simply not true. As Progressive argues, unlike the clause in *Generette*, "Other Insurance" clause in this case "does not limit coverage to the amount the Second priority UIM policy limits exceeds any other policy." ECF No. 18 at 16. That is to say, it does not purport to make second-level UIM coverage "gap" instead of "excess" coverage.

Rather, it "addresses the interaction of UIM coverages of the same priority[.]" *Id.* And nothing in *Generette* suggests the way in which it does so is against public policy. For example, there is no conflict between the language of the policy and § 1733, as there was in *Generette*, so a central part of the *Generette* court's rationale for invalidating the provision there is missing here. Nor has Plaintiff pointed to any other provision in the statute that says that when more than one UIM policy provides coverage at the second level of priority, the insurer cannot limit recovery to the "highest applicable limit for any one motor vehicle under any one policy in the Second priority."

To the contrary, this type of provision is necessary to effectuate the waiver of inter-policy stacking, which the Supreme Court expressly permitted in *Craley*, and "prevent the [Plaintiff] from recovering the 'sum of the limits for each motor vehicle as to which the [decedent] [was] an insured.'" *Craley*, 895 A.2d at 505 (quoting 75 Pa. C.S. § 1738(a)). It is also fully consistent MVFRL's cost-containment rationale. *See Heller*, 2010 WL 1778629 (refusing to invalidate similarly worded "Other Insurance" clause because to do so, "in spite of a valid waiver of stacking, would require this Court to essentially rewrite the MVFRL").

In sum, Plaintiff is bound by the waiver of inter-policy stacking in the Progressive policy, which, through operation of the policy's "Other Insurance" clause, limits the decedent's total recovery of UIM insurance to $100,000. Since Plaintiff already recovered that amount, he is not entitled to any additional recovery from Progressive. Accordingly, summary judgment will be granted on Plaintiff's breach of contract claim, as well as the bad claim faith. *See Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570 (E.D. Pa. 2003) ("Only in rare circumstances . . . may a bad faith claim survive the dismissal of the breach of contract claim."). An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH C. COSTA**, *Administrator of the Estate of GIOVANNI C. COSTA*, <br><br> Plaintiff, <br><br> v. <br><br> **PROGRESSIVE PREFERRED INSURANCE COMPANY,** <br><br> Defendant. | **2:16-cv-74** |

## MEMORANDUM OPINION

**AND NOW**, this 10th day of June, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED**, that Defendant's motion for summary judgment is **GRANTED,** and Plaintiff's motion for summary judgment is **DENIED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **Daniel S. Soom, Esquire**
Email: dsoom@yahoo.com
**Susan M. Papa, Esquire**
Email: 439court@comcast.net

**Daniel J. Twilla, Esquire**
Email: dtwilla@d3bk.com
**Jeffrey A. Ramaley, Esquire**
Email: ramaley@zklaw.com